UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DOMETIC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-cv-1260-DFH-TAB |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON SUMMARY JUDGMENT MOTIONS

Plaintiff Dometic Corporation is a Delaware corporation with its principal place of business in Indiana.  It manufactures various specialty products for the recreational vehicle ("RV") and marine markets, including small refrigerators and refrigeration systems.[1]  Defendant Liberty Mutual Insurance Company is a property and casualty insurer that does business in Indiana but is domiciled elsewhere.  Liberty issued four commercial  general liability insurance polices to Dometic.  Each policy was effective over the course of one year (except the first which was issued for a period of eleven months) from November 1, 2001 through October 1, 2005.

---

[1] Dometic's website (http://www.dometic.com/enus/Americas/USA) indicates that it manufactures refrigeration and refreshment systems designed to be used in hotel rooms and over-the-road trucks, as well as for the RV and pleasure boat markets.

The later three insurance policies each have a "vendors endorsement" that extended product liability coverage to vendors of Dometic's products. Dometic claims that several RV manufacturers that buy Dometic's refrigerators and offer them to RV purchasers as an option for or standard feature of their vehicles (collectively, the "RV vendors") have been sued by people who claim that they have suffered property damage or bodily injury caused by a defect in a Dometic refrigerator. According to Dometic, these RV vendors have tendered the defense of these claims to Liberty pursuant to the vendors endorsement of the later three CGL polices Liberty issued to Dometic, but Liberty has refused a defense. In Count I of its complaint, Dometic claims that Liberty has breached the insurance contracts by refusing to defend and indemnify the RV vendors and by failing to reimburse Dometic for amounts it has expended to satisfy its obligation of defending and indemnifying the RV vendors. In Count II, Dometic seeks a declaratory judgment finding coverage under the vendors endorsements. In Count III, Dometic asserts a claim of bad faith against Liberty for its handling of the claims to date.

Dometic has filed a motion seeking partial summary judgment, asking for a determination in its favor as a matter of law on its declaratory judgment count. Liberty contends that Dometic cannot assert a coverage claim on behalf of "unnamed vendors" in "unnamed lawsuits." Liberty also contends that it does not owe coverage to the two RV vendors that have been identified by Dometic because, even if they qualify as vendors, an exclusion bars coverage to vendors who

repackage, relabel or use Dometic's refrigerators as a part of any other thing. Finally, Liberty has filed its own motion for summary judgment.  It seeks judgment in its favor as a matter of law on all three counts of Dometic's Second Amended Complaint.  As explained below, the court denies Dometic's motion for partial summary judgment and grants in part and denies in part Liberty's motion for summary judgment.

The parties agree that Indiana substantive law applies to this insurance dispute.  The interpretation of an insurance policy "involves the same rules of construction and interpretation as other contracts." *Myles v. General Agents Ins. Co.*, 197 F.3d 866, 868 (7th Cir. 1999), quoting *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind. App. 1997).  When interpreting an insurance policy, a court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract.  *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. App. 2006).  The insurance policy must be interpreted as a whole, considering  all of the provisions of the contract, not just the individual words, phrases or paragraphs.  *Id.*

An unambiguous insurance policy must be enforced according to its terms, even those that limit an insurer's liability.  *Schenkel & Schultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 550 (7th Cir. 1997); *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1168 (Ind. App. 2001).  An insurance contract will be deemed ambiguous only if reasonable people would differ as to the meaning of its terms.

See *General Accident Ins. Co. of America v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996), citing *Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 486 (7th Cir. 1994).  Ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms.  *Hammond*, 759 N.E.2d at 1168.

I.      *Scope of Dometic's Declaratory Judgment Count*

Liberty's first challenge to Dometic's declaratory judgment count is directed to the breadth of the coverage determination being sought.  In its brief in support of its partial summary judgment motion, Dometic sets forth what it refers to as two examples of claims made by its RV vendors that have been denied by Liberty.  The first example involves an RV vendor identified as Fleetwood and litigants known as the Drake Plaintiffs who claim that a fire originating in a Dometic refrigerator installed in an RV sold by Fleetwood caused damage to their home.  The second example involves a vendor identified as Forest River and a lawsuit brought by plaintiffs referred to as the Pulliam Plaintiffs.  The Pulliam Plaintiffs claim that a Dometic refrigerator malfunctioned, causing their RV to catch fire and damaging their home and personal property.  Liberty claims that Dometic's declaratory judgment count should be limited to a ruling on coverage for these two particular cases, lest the court render coverage declarations based on hypothetical disputes.

The federal Declaratory Judgment Act, 28 U.S.C. § 2201, gives this court with the discretion to provide declaratory relief.  While a district court uses its discretion in deciding whether a declaratory judgment should issue, there must at least be a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to avoid the constitutional prohibition against issuing advisory opinions.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).  For example, in this lawsuit Liberty has produced unchallenged evidence that the policy limits of the 2004-2005 CGL policy have been exhausted and that no provision of the policy extends its liability past those limits.  If the court were to examine the 2004-2005 policy and determine whether it provided coverage to the RV vendors, it would be providing an advisory opinion.  The issue is mooted by the lack of policy proceeds at the end of that rainbow.[2]

Where jurisdiction is founded on diversity of citizenship, the court is guided by federal procedural standards but must apply state substantive law.  *Hanna v. Plumer*, 380 U.S. 460 (1965).  Whether a declaratory judgment action can be pursued in state court with respect to a particular matter may be a product of substantive considerations and may have an effect on a federal court's decision as to whether it should exercise its discretion to entertain such an action.  See

---

[2]Dometic's only response to the evidence presented by Liberty of the exhaustion of the 2004-2005 policy limits is to argue that exhaustion and other arguments that address issues not related to the language of the policy were irrelevant with respect to the declaratory judgment count.  That may or may not be true with regard to other issues, but undisputed evidence that the policy limits have been exhausted moots any coverage issue with respect to the 2004-2005 policy.  Any interpretation of the policy language would be only advisory.

*Allstate Ins. Co. v. Charneski*, 286 F.2d 238 (7th Cir. 1960) (reversing decision to entertain declaratory judgment action on coverage issue; Wisconsin law allowed third-party direct actions against insurers and, as a matter of public policy, forbade insurers from bringing separate declaratory judgment actions against injured third-parties).   However, in considering the propriety of a declaratory judgment action here, this court is not faced with procedural or substantive state law that differs from the standards under federal law.

Indiana has adopted the Uniform Declaratory Judgment Act, and its courts allow the pursuit of a declaratory judgment if the judgment  would effectively solve the problem involved and no traditional remedy would be as effective or efficient in resolving the dispute.  *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 707-08 (Ind. App. 2001).   The determinative factor for an Indiana court deciding the propriety of issuing a declaratory judgment is whether it will result in a just and more expeditious and economical determination of the entire controversy.  *Id.*  Declaratory judgment actions seeking insurance coverage determinations are quite common in Indiana and often considered a preferred method for insured and insurer to litigate contractual rights under an insurance policy.  See *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285 (Ind. App. 1997); accord, *Sanyo North America Corp. v. Absocold Corp.*, 2008 WL 646044, at *4 (S.D. Ind. March 6, 2008) (McKinney, J.) (denying motions to dismiss as premature a declaratory judgment action seeking coverage).

In the end, as long as this court is satisfied that the declaration being sought is not so broad as to cover circumstances that are so dissimilar that a coverage determination could turn on subtle distinctions, it is appropriate under both Indiana and federal law to make such a determination.  In this case a declaration of coverage with respect to the vendors endorsements attached to the two Liberty CGL policies still at issue would appropriately address all Dometic RV vendors named as defendants in a lawsuit where it is alleged that a defect in or malfunction of the Dometic RV refrigerator is the cause or origin of bodily injury or property damage, so long as there are no material differences between the degree of involvement of each of the RV vendors in the chain of installation and/or distribution.

Liberty's position that this court should entertain a declaratory judgment only with respect to the two specific Drake and Pulliam lawsuits, provided by Dometic as examples where coverage was denied, does little to serve the goals of judicial efficiency and the resolution of an entire dispute.  Liberty does not deny that it has asserted the same exclusion in denying coverage to more of Dometic's vendors than just Fleetwood and Forest River.  Where, as here, the dispute regarding the application of the vendors endorsement and exclusion is a substantial controversy and Dometic and its vendors  have an actual and immediate interest in knowing whether they have coverage under the policy, the interests of justice would be best served by a more inclusive determination than one limited to the two lawsuits used by Dometic in its brief to exemplify the larger

issue.   Unless there are material distinctions between the role of various RV vendors or the type of "installation activity" required for particular recreational vehicles or Dometic refrigerators, revisiting the coverage issue each time a new lawsuit is filed would be a waste of everyone's time and resources.

II.      *Insurance Policies and Provisions at Issue*

All of the Liberty policies at issue afford liability coverage to the insured for damages resulting from bodily injury or property damages which the insured becomes obligated to pay, unless that obligation to pay is voluntarily assumed. Coverage under the policies issued to Dometic is triggered by the date of loss.  The first policy issued to Dometic for coverage beginning November 1, 2001 through October 1, 2002 had no vendors endorsement and consequently affords no coverage to the RV vendors.  As just mentioned, the fourth policy covering the period of October 1, 2004 through October 1, 2005 has had its limits exhausted, so that a declaratory judgment on that policy would serve no purpose.  The two annual policies that cover the period from October 1, 2002 through October 1, 2004 have vendors endorsements that are identical and, if interpreted as applicable, could provide coverage to an RV vendor.

The vendors endorsement added to the 2002-2003 and 2003-2004 basic CGL policies provides in pertinent part as follows:

ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

* * *

SCHEDULE

| Name of Person or Organization (Vendor) | Any person or organization purchasing goods or products from named insured or an insured's distribution for the purposes of resale. |
|---|---|
| Your products | All products of the named insured |

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1.      The insurance afforded the vendor does not apply to:

* * *

d.      Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.

* * *

f.      Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.

g.      Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

It is a well established principle of Indiana law that if a provision of an insurance policies is ambiguous, it is to be interpreted strictly against the insurer. *Auto Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. App. 2006). This is particularly true with regard to policy provisions that exclude coverage. *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 569 (7th Cir. 1997). The insurer has the burden of proving that any exclusion or limitation in coverage unambiguously applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 724-25 (Ind. App. 2004).

III.    *Application of the Vendor's Endorsement*

Liberty's first line of defense against coverage under the undisputed facts is its contention that the RV vendors are not truly vendors as that term is commonly used. Liberty argues that the RV vendors are original equipment manufacturers that incorporate various parts or components into a unique product of their own. However, at the time the endorsement was sought there is no question that Liberty was made aware of the product lines manufactured by Dometic and that RV vendors were at least a part of the vendor force for which the endorsement was being sought.

Liberty asserts that extrinsic evidence from its underwriting file should not be considered in construing the terms of a contract. However, where there is an undefined term, the application of which comes with a degree of uncertainty, it is

entirely appropriate to examine extrinsic evidence, such as the knowledge of the parties at the time of contracting, to ascertain the intent of the parties. More important, and as noted previously, ambiguities are to be viewed in a light most favorable to the insured and construed against the insurer. *Id.* at 723. To that end, the court has no problem finding that the RV vendors qualify as vendors to which coverage is afforded by the vendors endorsement, unless otherwise excluded.

In a variation of its argument with regard to whether RV vendors are actually vendors or manufacturers, Liberty maintains that even if the vendors endorsement affords coverage to RV vendors, that coverage is barred by the exclusion that is a part of that endorsement. Liberty claims that the refrigerators that Dometic sold to the RV vendors were made a "part of another thing" by the vendor and, therefore, subpart 1(g) of the endorsement applies. That subsection provides that:

> 1.     The insurance afforded the vendor does not apply to:
>
> * * *
>
> g.     Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

In *Sears Roebuck and Co. v. Reliance Ins. Co.*, 654 F.2d 494 (7th Cir. 1981), the Seventh Circuit provided some of the earliest interpretive guidance on similar exclusions in vendors endorsements in product liability lawsuits where several entities are involved in the manufacturing and distribution chain leading to the ultimate purchaser. In the *Sears* case, Sears bought fabric manufactured by Riegel

Textile Corporation, and supplied the fabric to Rollie, Inc. to tailor the fabric into a finished product. Sears was sued after a young girl died from burns she sustained when the slacks she was wearing caught fire. Sears sought indemnity and a defense to the lawsuit as an additional insured under the vendors endorsements attached to the CGL policies of both Rollie and Riegel, but the insurers denied defense and coverage. Sears then brought a declaratory judgment action against the insurers of Rollie and Riegel.

The insurer of Riegel argued that because the fabric was fashioned into slacks, the exclusion in the vendors endorsement applied to bar coverage. That exclusion read:

> 1.    The insurance with respect to the vendor does not apply to:
>
> (b)    bodily injury or property damage arising out of:
>
> (i)    any physical or chemical change in the form of the product made intentionally by the vendor,
>
> (ii)    repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer and then repacked in the original container,
>
> (iv)    products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

*Id.* at 496.

Applying Illinois law, the Seventh Circuit found that Sears was entitled to coverage under the vendors endorsement. As to the exclusion for injuries which

arise out of any physical or chemical change or out of repacking, the court noted that the injury at issue did not meet the "arising out of" requirement. *Id*. at 497-98. The court found that the "arising out of" language required that the changes in form cause the injury. In the *Sears* case, the flammability of the fabric was at issue, not the fact that the fabric had been tailored. *Id*. at 498.

The more difficult analysis for the court was with regard to that part of the exclusion which negated coverage for injuries arising out of products which, after distribution or sale by Riegel, had been "labeled or relabeled or used as a part or ingredient of any other thing or substance by or for the vendor." Riegel's insurer, Commercial Union, maintained that there was no nexus needed between the changes to the fabric and the injuries with respect to that part of the exclusion. *Id*. The Seventh Circuit disagreed:

> The problem with Commercial's argument is that it proves too much. Riegel sold the fabric to Sears to become slacks with the Sears' label. If the mere labeling or use as a "part" of the finished slacks could defeat coverage of any defect in the fabric itself, then the vendor's insurance covering Sears could not have been worth the piece of paper on which it was printed.

*Id*. Because the insurer had listed Sears as an additional insured, the court decided it must have intended to provide coverage unless there was some nexus between the changes made to the fabric and the injuries at issue. *Id*. at 499. Otherwise it was accepting premiums for an endorsement which had no actual value. *Id.*

The illusory nature of the endorsement, if it were to be interpreted as not requiring a nexus between the damages alleged in the underlying claims and the changes to the insured's product, is a common theme in cases where a court was asked to interpret vendors endorsements containing the "arising out of" language as a preface to the exceptions listed.  See *Murray Ohio Mfg. Co. v. Continental Ins. Co.*, 705 F. Supp. 442 (N.D. Ill. 1989) (insurer of coaster brake maker was required to defend bicycle manufacturer against multi-theory complaint that included allegations of an unfit brake system and to indemnify with regard to any successful recovery based on faulty brakes); *Mattocks v. Daylin, Inc.*, 452 F. Supp. 512 (W.D. Pa. 1978) (insurer of maker of fabric used in pajamas that caught fire was required to provide coverage to pajama maker), *aff'd mem.*, 614 F.2d 770 (3d Cir. 1979).

After these cases were decided, however, the typical broad form vendors endorsement went through language changes leading to the exclusion language at issue in this case.  The vendors endorsement in the two Liberty policies at issue here does not have the same "arising out of" language that was so much the focus of earlier reported cases.  The endorsement states that it applies to bodily injury or property damage "arising out of 'your [Dometic] products' . . . distributed or sold in the regular course of the vendor's business. . . ." The new endorsement does not include the "arising out of "language as a preface to the list of exclusions that follows, including the exclusion for products that have been labeled, relabeled or made a part of any other thing.  In part because of that language change, Liberty asserts, the exclusion bars coverage here.  According to Liberty, the *Sears* holding

that the damages must be related to the change to or incorporation of the named insured's product in order to be excluded from the vendor's coverage does not apply where the "arising out of language" no longer modifies the list of what is excluded from coverage.

At least one court interpreting the new language has agreed.  In *Travelers Ins. Co. v. Freightliner Corp.*, 628 N.E.2d 325 (Ill. App. 1993), the court was asked to interpret the vendors endorsement when the insurer of National Seating, a seat manufacturer, filed a declaratory judgment action seeking a determination that a truck cab manufacturer was not entitled to coverage under the vendors endorsement for claims by truck drivers who were injured as a result of an alleged defect in the seats.  The insurer argued that Freightliner had incorporated the National seats as component parts of its trailer truck cabs and thus was a manufacturer and not a vendor entitled to coverage.  *Id.* at 327.

Noting that the case was one of first impression in Illinois with regard to the new vendors endorsement, the court found several reasons to distinguish the *Sears* and *Murray* cases.  Sears and Murray were specifically identified as additional insureds under the policies at issue in those cases, whereas the endorsement attached to the policy provided to National was a blank endorsement.  *Id.* at 330.  A denial of coverage to Sears or Murray would have rendered the vendors endorsement a nullity because no vendor would have been covered.  That was not the case with National because a majority of its vendors sold the truck seats "off

the rack" and would be appropriate additional insureds if similar lawsuits were filed against them.  *Id.* at 330-31.  And, finally, the court stated that the elimination of the "arising out of" language ahead of the exclusion list meant that the exclusion applied without regard to how the damages arose.  *Id.* at 331.

Nevertheless, there is no unanimity with regard to the interpretation of the newer endorsement language, as can be seen in the decision from the California Court of Appeals in *Shade Foods, Inc. v. Innovative Product Sales & Marketing, Inc.*, 93 Cal. Rptr. 2d 364 (2000).  In *Shade Foods* the same language was contained in the endorsement attached to the policy of an almond processor, Innovative Product Sales, whose almonds were sold to a wholesale food manufacturer, Shade Foods, for use in its nut clusters that were sold in turn to General Mills for incorporation into cereals.  The almonds contained wood slivers.  The wholesaler brought suit against the almond processor and its insurer after General Mills identified the problem, destroyed the cereal containing the nut clusters, and presented Shade foods with the bill.  *Id.* at 378.

Innovative's insurer Northbrook contended that its vendors endorsement did not apply because of the exclusion for physical or chemical change in the product, as well as the exclusion for products made a part of or ingredient of any other thing.  *Id.*  In finding that coverage would apply, the court cited the *Sears* decision favorably, without discussion of the change in the endorsement's language since the time of that decision.  *Id.*   Rather, the court stated:

> There is, however, no logical reason to treat changes in the product or its subsequent use as an ingredient in another product as excluding coverage unless the changes or subsequent use cause the injury to the third-party claimant. . . . Here, the property damage was caused by a defect in the diced almonds, i.e., wood splinters, existing at the time they were sold to Shade. The processing of the almonds into nut clusters by shade and their subsequent incorporation as an ingredient in cereal did not create any new risk or introduce a distinct defect causing the injury.

*Id.* The court concluded by stating that, as in *Sears*, the endorsement would be rendered a nullity if the insurer's interpretation were adopted.  *Id.* at 379.

A more recent decision from the Seventh Circuit, combined with the analysis from the cases previously cited and discussed, convinces this court that it knows too little at this point to grant a summary judgment to either party on the declaratory judgment count.  In crafting the court's decision in *Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 280 F.3d 744 (7th Cir. 2002), Judge Posner articulated the purpose of vendors endorsements and then identified particular underlying facts that led the court to the conclusion that with respect to the failure to warn case before it, the vendors endorsement did not supply coverage.  *Id.* at 747.

In that case, after taking diet pills manufactured by Nion Laboratories, a plaintiff suffered a stroke and sued both the manufacturer and the distributor.  *Id.* at 746.  The distributor, Team Up International, actually designed the formula for the pills and provided the manufacturer with all labels and warnings.  The lawsuit

included a claim based on inadequate warnings and was settled for more than one million dollars, which was paid by Hartford, the excess insurer of Team Up. *Id.* St. Paul insured the company that acquired Nion and provided the vendors endorsement applicable to the time of the injured plaintiff's claim. Hartford believed its insured, Team Up, was covered by the vendors endorsement and brought suit seeking a declaratory judgment requiring St. Paul to pay up to its policy limits of $1,000,000 toward the expense of the settlement. *Id.*

Judge Posner first outlined the purpose of a vendors endorsement, noting that it is to protect the vendor from the expense of being an additional defendant in a lawsuit arising from a defect in a product that the vendor distributes. *Id.* Assuming the vendor has a passive role in distributing a manufacturer's product, it makes sense that the manufacturer remains responsible for obtaining insurance to cover any damages caused by the product because liability exposure is not significantly increased by the addition of a passive intermediary. *Id.* The majority view with respect to vendors endorsements, including the view of California, which state's law applied in the case, is that coverage through the endorsement will not apply if the vendor participates in creating the injuring product, alters or repairs the product, or otherwise introduces a defect. *Id.* at 747.

Judge Posner then applied an economic method of policy interpretation:

The majority view is not based on the language of the vendor's endorsement, which does not define "vendor," or on the ordinary meaning of the word,

which does not distinguish between active and passive vendors, but on the improbability of supposing that the manufacturer's insurer intends to protect others against the risks that the others create. A further consideration is that vendor's endorsement policies are cheap add-ons to products liability policies, *American White Cross Laboratories, Inc. v. Continental Ins. Co., supra*, 495 A.2d at 156, and their cheapness makes the most sense if they're limited to the case in which the vendor, being completely passive in relation to the harm giving rise to liability rather than the active author of the harm, would be entitled to indemnity from the manufacturer in the event that he (the vendor) was sued and held liable and made to pay damages.

*Id.* The court concluded that it made no sense for a cheap vendors endorsement to buy the type of protection Hartford was urging for its insured, which was not a passive distributor but in fact had provided the label content that was being challenged as insufficient or defective. *Id.* at 747-48.

The record before this court offers no real evidence on this score, in light of the factors that other courts have considered in deciding the availability of coverage under this or similar endorsements. This is true even recognizing that none of the cases discussed applied Indiana law or serve as binding precedent here. The record includes no record of how any additional premium for the vendors endorsement was determined, if indeed there was any additional premium. Also missing is a clear indication of how much of Dometic's business is done through the RV vendors and how much involves products sold "off the rack" by accessory stores or other retail or wholesale outlets. The endorsement at issue here does not list the names of specific vendors, but also is not blank, insofar as it states that it applies to all of Dometic's products and any person or organization

purchasing the products for the purpose of resale.  The court is not persuaded by Liberty's argument that the existence of any vendor that sells any Dometic products in a more traditional retail setting shows that the endorsement is not illusory.  For example, if 98 percent of Dometic's sales are through RV vendors or other vendors (such as boat sellers) that merely install the unchanged products on a boat or vehicle that was being purchased by the end consumer, it would be difficult to interpret the exclusion to bar coverage to vendors of 98 percent of Dometic's products.

While the RV vendors roles are not totally passive, they apparently rarely do more than what might be done to install a traditional refrigerator in a home, and that analogy has a certain appeal under the circumstances.  Is this a circumstance more comparable to a seat in a tractor trailer cab, as in the *Freightliner* case, or does it jibe more with a traditional refrigerator, which no one has suggested would be considered a component part of a house?  The record is too sparse to provide a surefooted answer to that question.  Further, are there any differences between what Fleetwood might do to install a Dometic refrigerator in its particular vehicle and what might be done by another RV vendor?  At this point we have only some fairly broad deposition testimony from a Dometic engineer on that question.

These gaps in the record affect the court's ability to assess the propriety of issuing a declaratory judgment that would apply to more than the particularized circumstances of a single RV vendor or a single lawsuit.  The scant record limits

any confidence the court would have in determining whether an RV vendor's role is sufficiently passive so as to avoid the exclusionary language applicable to a product that is "made a part of another thing" by the vendor.

The same inadequacies in the record make a decision with respect to Dometic's claims of contract breach and bad faith unobtainable at this point as well. Certainly one of the disputed issues in the breach of contract claim, the effect of Dometic entering into settlement agreements with its RV vendors, cannot be judged correctly without a better understanding of the facts underlying the issuance of the endorsements and the distinctions, if any, between Dometic's vendors. While the bad faith claim does not look particularly promising, that too should not be decided without the court having an opportunity to analyze a greater evidentiary record.

IV.    *Conclusion*

Often, insurance coverage disputes can be decided at the summary judgment stage. In this case, a final decision with respect to the first and last of the four polices issued by Liberty to Dometic can be made. However, in light of the factual considerations that other courts have examined in interpreting vendors endorsements, and because this court desires to have as much of the same type of factual background before it when making its determination, a decision with

respect to the other two polices would be premature at best without additional supplementation of the record.

Accordingly, plaintiff's Motion for Partial Summary Judgment (Docket No. 66) is DENIED.  Defendant's Motion for Summary Judgment (Docket No. 73) is GRANTED IN PART, to the extent that defendant does not owe coverage to plaintiff's RV vendors under the policy issued to Dometic covering the period of November 1, 2001 through October 1, 2002.  Plaintiff's claim for declaratory judgment with respect to the policy issued by defendant covering the period of October 1, 2004 through October 1, 2005 is dismissed without prejudice because any determination by this court would be purely advisory in light of the policy limits of that policy having already been exhausted.  Defendant's summary judgment motion is DENIED in all other respects.

So ordered.

Date: September 26, 2008

_David F. Hamilton_
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Hamish S. Cohen
BARNES & THORNBURG LLP
hamish.cohen@btlaw.com

John B. Drummy
KIGHTLINGER & GRAY
jdrummy@k-glaw.com

Charles P. Edwards
BARNES & THORNBURG LLP
charles.edwards@btlaw.com

Guna  Kirhnere
BARNES & THORNBURG LLP
gkirhnere@btlaw.com

Ginny L. Peterson
KIGHTLINGER & GRAY
gpeterson@k-glaw.com

Casey Ray Stafford
KIGHTLINGER & GRAY
cstafford@k-glaw.com